## 50585. CITIZENS & SOUTHERN NATIONAL BANK v. PLOTT et al.

ARGUED MAY 7, 1975 — DECIDED SEPTEMBER 2, 1975 —
REHEARING DENIED SEPTEMBER 23, 1975 —

*Alston, Miller & Gaines, Jack H. Senterfitt,* for appellant.

*Lipshutz, Macey; Zusmann & Sikes, Winston H. Morriss, H. William Cohen,* for appellees.

PANNELL, Presiding Judge.

William E. Potts obtained a judgment against Julian R. Jordan in the amount of $30,000 principal, plus interest and court costs. He subsequently, after making affidavit and giving bond, had a summons of garnishment issued thereon and served upon the Citizens & Southern National Bank on April 30, 1974. The summons gave the name of the defendant as "Julian R. Jordan, 1554 Piedmont Road, N. E., Atlanta, Ga." The bank, on June 14th, filed an answer, the material parts of which are as follows:

"1. Because of its inability to answer as provided in Georgia Code Ann. § 46-301, Garnishee hereinafter sets forth the facts plainly, fully and distinctly so as to enable the Court to give judgment thereon as is provided in the

last sentence of Georgia Code Ann. § 46-301.

"2. On April 30, 1974, the date of service of said Summons on the Bank, the Customer Relations Department of the Bank, which handles garnishments for the Bank, determined that Mr. J. R. Jordan was listed as the 'self-owner' of checking account no. 056-89-369 which is in the name of 'Jordan J. & R. Jewelers.'

"3. On April 30, 1974, there was $2,223.59 in said account. Since April 30, 1974, $173.40 has been deposited in said account. This is a total of $2,396.99.

"4. Upon information and belief, there are registered with the Secretary of State of the State of Georgia corporations by the name of Jordan Jewelers, Inc. and J & R Jewelry Company, Inc., but no corporation by the name of Jordan J & R Jewelers.

"5. The Bank has no Corporate Resolutions for said account in the name of 'Jordan J & R Jewelers' and the signature card for said account, a copy of which is attached, shows that J. R. Jordan is the 'self-owner' of said account.

"6. In view of the above information, the Bank is unable to determine whether the funds in said account belong to a corporation or to the Defendant in the above-styled action.

"7. On May 10, 1974, the Customer Relations Department of the Bank first learned that checking account no. 294-98-722 in the name of 'Bob Jordan' belonged to the Defendant, Julian R. Jordan. At such time, the Customer Relations Department held all funds in said account, which totaled $66.86. Before that time the Customer Relations Department had no reason to know that an account in the name of 'Bob Jordan' would be an account belonging to Julian R. Jordan.

"8. Since May 10, 1974, no funds have been deposited in said checking account no. 294-98-722.

"9. Other than the funds indicated above, there have come into the hands of the Bank no property or effects of Defendant Julian R. Jordan.

"10. In view of the above information, the Bank is reporting into Court with its answer a check in the amount of $2,463.85, which is the sum of the amounts $2,396.99 and $66.86, cited above."

The plaintiff filed a traverse to the answer of the garnishee. It appeared that the jewelry account was listed as "Jordan Jewelers" rather than "Jordan J. & R. Jewelers" as alleged in the answer. The authorized signature on the "Jordan Jewelers" account was shown as "J. R. Jordan," the mailing address as "Ansley Mall, Piedmont and Monroe Dr., N. E. Atl., 30309"; that the business was "self-owned"; previous bank affiliation was shown as "C & S BV", which apparently referred to Broadview Plaza where the form showed a branch office was maintained. The card showed the account was opened by O. Awtrey, the date it was opened and the initial deposit. It was a regular account on an individual checking account signature card. The sum held under the account of Jordan Jewelers was by agreement of counsel disbursed to a corporation named Jordan Jewelers, Inc., leaving for consideration the account listed under the name of Bob Jordan. The card on the Bob Jordan account listed it in the name of "Mr. Bob Jordan." The authorized signature was "Bob Jordan." The residence address was "c/o Jordan Jewelers, 1544 Piedmont Road." The phone number was given and after the words "business address" was "Owner, Jordan Jewelers" with a phone number listed. This card showed the account was opened by Alma Royster. The account was listed on the card as an individual regular account. The signature on the two cards is amazingly similar, particularly the last name "Jordan."

Immediately upon service upon the garnishee of the summons of garnishment, garnishee's agents conducted a search of garnishee's records of accounts to determine whether it was indebted to the defendant listed on the face of the summons of garnishment as "Julian R. Jordan." This search was conducted by the same method regularly used by garnishee in responding to summonses of garnishment. Since all records of individual accounts maintained with garnishee are stored on electronic data processing equipment, this method involves making a programmed inquiry into the computer under the name exactly as it appears on the summons of garnishment. Then inquiries are made using simply the initials of the name listed on the summons of garnishment, which

inquiry would show all individual account titles with any first or middle name beginning with the same initials entered into the computer.

In the instant case, garnishee's agents programmed inquiries into the computer first under the name "Julian R. Jordan" and then using the initials "J." and "R.", and none of these inquiries revealed any individual accounts owned by Julian R. Jordan. Since this computer search of individual account records failed to show any account, garnishee's agents went still further, and searched the records of corporate accounts, which records are maintained in a separate, noncomputerized file. This search revealed an account in the name of "Jordan Jewelers," with the name "J. R. Jordan" listed as "self-owner." The signature card for this account contained nothing to indicate what the initial "R" stood for, nor did it indicate any other accounts that may be listed in a different name. Since this listing, as well as inquiries made to the Georgia Secretary of State's office, made it unclear whether the funds in this account belonged to a corporation or to Julian R. Jordan as an individual, a hold was placed on the account and the funds were paid into court with the answer of garnishee.

On May 10, 1974, garnishee first learned that the defendant named in the summons of garnishment, Julian R. Jordan, maintained an individual account with garnishee, which account was entitled "Mr. Bob Jordan," which information was provided to the garnishee by the defendant's attorney. Immediately upon such discovery, a hold was placed on this account and the funds remaining in this account as of that date were paid into court with the answer of garnishee. Between the date of service of the summons of garnishment and May 10, 1974, a total of $1,930 was paid against checks drawn on this account.

*Judgment affirmed. Clark and Marshall, JJ., concur.*