## A95A1437. MOBILE PAINT MANUFACTURING COMPANY, INC. v. JOHNSTON et al.

### (464 SE2d 903)

RUFFIN, Judge.

Mobile Paint Manufacturing Company, Inc. ("Mobile") obtained a judgment against Larry A. Johnston. In order to satisfy the judgment, Mobile filed a garnishment against Johnston in the amount of $15,026.23, naming NationsBank of Georgia, N.A. ("NationsBank") as garnishee. NationsBank answered, stating that $93.10 was subject to the garnishment. Mobile traversed, contending funds in the Nations-Bank account of a separate entity, Southeastern Coating, Inc. ("Southeastern") were also subject to the garnishment. We granted Mobile's application for discretionary appeal from the trial court's order denying its traverse. For reasons which follow, we reverse.

The record shows that Johnston, who was Southeastern's vice president, was a signatory on Southeastern's bank account with NationsBank. It is NationsBank's general practice to obtain a corporate resolution when it opens a corporate account, and although it is not required, the bank also requests that corporations provide copies of their corporate seals. Although a NationsBank representative stated that she did not think the bank would have opened a corporate account without obtaining a corporate resolution, NationsBank could not locate Southeastern's resolution, and it is undisputed that although the account was opened as a corporate account, Southeastern was not incorporated.

When Mobile filed the garnishment, it provided NationsBank with only the name of the defendant, "Larry A. Johnston." Nations-Bank contended that even though Johnston was a signatory on the Southeastern account, without additional information it could not locate accounts other than accounts in Johnston's name to determine whether additional funds were subject to the garnishment. The trial court found that although it appeared that NationsBank "did not follow its own internal procedure with respect to the opening of a corporate account . . . [the bank] treated this as a corporate account and the Court cannot say that it was error to do so. To hold otherwise would place an onerous burden on the garnishee/bank." The trial court then concluded that "assuming that this had been a valid corporate account, [NationsBank] would have no authority to freeze [the] account based on [Johnston's] signatory authority."

We agree with Mobile that this ruling was in error. If Nations-Bank did treat Southeastern's account as a corporate account, it did so at its own peril. Under OCGA §§ 18-4-20 and 18-4-82, Nations-Bank was required to answer the summons of garnishment describing what money was subject to the garnishment and paying that money into court. OCGA § 18-4-20 (b) subjected to the garnishment *"[a]ll*

*debts owed by the garnishee to the defendant* at the time of service of the summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of the service to the date of the garnishee's answer. . . ." (Emphasis supplied.) In this case, the signature cards on the Southeastern account contained only two names, Larry Johnston and Jan Johnston. To the extent that the money in the Southeastern account belonged to Larry Johnston, that money was a debt owed by NationsBank to him. See *West v. Fed. Deposit Ins. Corp.*, 149 Ga. App. 342 (2) (a) (254 SE2d 392) (1979), aff'd 244 Ga. 396 (260 SE2d 89) (1979). The fact that NationsBank thought Southeastern was a corporation because it opened the account as a corporate account does not relieve it of the responsibility to comply with the foregoing statutory requirements. Banks should, as NationsBank asserts it generally does, take whatever steps are necessary to ensure that they can comply with the garnishment laws of this state. Garnishment proceedings are "measured by the strict terms of the statute." *Summer v. Allison*, 127 Ga. App. 217, 227 (1) (193 SE2d 177) (1972). In the case of corporate accounts, banks should take whatever steps are necessary to ensure that an account being opened as a corporate account, does indeed belong to a duly formed corporation. The garnishment statutes do not excuse a bank's failure to take such precautions, and in the absence of authority in this regard, we will not do so. It follows that the trial court erred in concluding that NationsBank was entitled to assume the Southeastern account was a legitimate corporate account.

Nor does the fact that NationsBank was unable to locate the account relieve the bank from its responsibilities under the garnishment statutes. In *C & S Nat. Bank v. Plott*, 135 Ga. App. 778 (218 SE2d 901) (1975) rev'd on other grounds, 236 Ga. 814 (225 SE2d 436) (1976), this Court held that "[t]he fact that the garnishee bank's retrieval system for its account files failed to disclose to its officer in charge of answering garnishments the contents of the [other account] does not relieve the bank of its responsibility. Whether or not its retrieval system functions, it is on notice of the contents of its account files." Id. at 778.

NationsBank argues that because it is a large financial institution, it cannot locate corporate accounts without a social security number, tax identification number, account number or the business name. That NationsBank's records did not allow them to find Johnston's account in this case should not work to the detriment of Mobile. Mobile provided the information on the affidavit and summons of garnishment required under OCGA §§ 18-4-61 and 18-4-62, and while we agree with NationsBank that OCGA § 18-4-20 (h) encourages garnishing plaintiffs to provide garnishees with social security numbers when possible to enable garnishees to better locate funds

due to the defendant, that statute does not require such information.

Nor does NationsBank's status as a large financial institution with numerous customers make its failure to discover the account legally excusable. Whether a financial institution has five or five million depositors, that financial institution is on notice of the contents of its account files, and it is required to comply with the summons of garnishment. See *Plott*, supra. A large financial institution will not be permitted to shield itself from those requirements by asserting that its size makes compliance an onerous burden. The size of an institution should neither insulate it from liability nor facilitate its liability.

Finally, NationsBank argues that even if it were required to locate the account, given that Johnston's wife was also a signatory on the account and Mobile did not show the funds belonged solely to Johnston, Mobile did not meet its evidentiary burden on its traverse. However, the trial court's order does not indicate that in denying the traverse, it considered anything more than NationsBank's failure to locate the account. If NationsBank had located the account and was unsure what funds in it belonged to Johnston, it should have filed an answer stating such. See *C & S Nat. Bank v. AVCO Financial Svcs.*, 129 Ga. App. 605 (4) (200 SE2d 309) (1973). Accordingly, because we find that NationsBank was not excused from locating the account, the judgment of the trial court was erroneous.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED DECEMBER 4, 1995.

*Neil A. Moskowitz*, for appellant.

*Alston & Bird, Candace N. Smith, Robb E. Hellwig*, for appellees.